UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| VS. ) | DOCKET 2:19-cr-175-NT |
| ) | |
| ALEXIS BOYD ) | |
| ) | |

**DEFENDANT'S MOTION TO DISMISS**

Now comes Alexis Boyd and moves to dismiss the Indictment against her under the Equal Protection Clause of the United States Constitution, Amendments V and XIV. She was the subject of an unconstitutional search and seizure, the genesis of which was her perceived racial identity, certain other physical characteristics, and her manner of hairstyle and dress. As such, the Indictment must be dismissed as violative of her equal protection rights.

I.   FACTUAL BACKGROUND

Ms. Boyd adopts and incorporates the facts as set forth in her motion to suppress and motion for discovery, filed contemporaneously with this motion. Those facts, gleaned from the discovery so far produced in this case, suggest that Maine State Trooper John Darcy manufactured a traffic violation to justify the seizure and search of the vehicle in which Ms. Boyd was a passenger because he saw that both Ms. Boyd and the driver of the vehicle were black and that their hairstyle and manner of dress corresponded with his notions of what a "thug" looks like. On the basis of his racist hunch, Trooper Darcy illegally detained Ms. Boyd and the driver until another trooper arrived with a drug dog.

In a recording captured during another, separate, constitutionally violative traffic stop, Trooper Darcy can be heard outlining what he looks for when he makes a determination that he should pull someone over on suspicion of drug trafficking. Nowhere to be heard are the words: "evidence of the commission of a crime." Instead, he can be heard saying that he noticed the driver of the vehicle at issue in that traffic stop and:

> "Yeah, he's wearing a wifebeater, he's got dreads.  He looks like a thug.  He may not be . . . and I'm not profiling him racially because I don't care that he's white or black. White kid, neck tats all over him, fucking sideways hat, thug. You know what I mean?  So like . . . I get . . . I hate when people try to make it seem like that's what it is.  I care about where people are from, and the way they seem . . . you know what I mean?  Do they seem like they can be involved in drug dealing or gangs or something.  I don't give a fuck if someone's black or white.  Like . . . and I like saying this, like Nicole has a niece who is half-black.  I'll tell someone, 'Dude, my fucking niece is half-black.'  Like, don't play that racial shit with me."

Ms. Boyd is a young black woman who was wearing a yellow headwrap over her braids, white shirt, and black trackpants. The driver of the car in which she was riding was a young black man with dreadlocks.

## II.   LAW AND ARGUMENT

"[R]acially selective law enforcement violates this nation's constitutional values at the most fundamental level; indeed, unequal application of criminal law to white and black persons was one of the central evils addressed by the framers of the Fourteenth Amendment." *Marshall v. Colombia Lea Regional Hospital*, 345 F.3d 1157, 1168 (10th Cir. 2003). The Equal Protection Clause prohibits the discriminatory application of facially impartial laws. Here, the Defendant must show by a preponderance of the evidence that the trooper's actions both had a discriminatory effect and were motivated in part by a discriminatory purpose. *See Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 272-74 (1977); *Castenada Sheriff v. Partida*, 430

U.S. 482, 501 (1977). Once the defendant makes a prima facie case for discrimination, the burden shifts to the government to rebut the presumption. *Id.* at 493.

The decision to prosecute "may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (emphasis added). Ms. Boyd must demonstrate that she is a member of a protected class, that she is otherwise similarly situated to members of an unprotected class; and that she was treated differently than those other members. Ms. Boyd was the subject of selective law enforcement based on her race, her hairstyle, and her manner of dress.

To show a discriminatory effect, the Defendant must demonstrate that she is a member of a protected class; that she is otherwise similarly situated to members of an unprotected class; and that she was treated differently. *Chavez v. Illinois State Police*, 251 F.3d 612, 636 (7th Cir. 2000). The classification of Alexis Boyd and based on her race, hairstyle, and clothing is likewise entitled to the highest standard of scrutiny provided by law. See, e.g., *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975).

It is "constitutionally impermissible, violative of the Equal Protection Clause," when "an officer initially targets someone solely because of his race, without additional factors, and because of the person's race the officer follows and investigates that person for drug trafficking." *United States v. Avery*, 137 F.3d 343, 353-54 (6th Cir. 1997). This is exactly what happened in this case. Trooper Darcy observed a black man and woman driving northbound on Interstate 95, and he manufactured a reason to stop them so that he could pull them over and search their persons and their vehicle.

Selective enforcement like that which occurred here is unconstitutional. It has no place in a just and equal society governed by the rule of law. The "risk inherent in such practice is that some police officers will use the pretext of traffic violations or other minor infractions to harass members of groups identified by factors that are totally impermissible as a basis for law enforcement activity – factors such as race or ethnic origin, or simply appearances that some police officers do not like, such as young men with long hair, heavy jewelry, and flashy clothing. *U.S. v. Scopo*, 19 F.3d 777, 786 (2d Cir. 1994) (Newman, J. concurring). There can be little doubt that this is what happened to Ms. Boyd.

Trooper Darcy himself articulated the characteristics he looks for when deciding who to stop and not to stop – all of which have historically been used to classify and marginalize Black people in the United States.[1] When he claims, on the "Walker recording" referenced throughout Ms. Boyd's pretrial filings and attached hereto as Exhibit 1, that he looks at an individual's appearance and evaluates them for possible drug trafficking associations based on characteristics stereotypically attached to people of color, but claims to do so with no reference to their race – he engages in the time-honored tradition of claiming "I cannot be racist because I don't see color" or, "I cannot be racist because I know and associate with people of color."

As detailed in Ms. Boyd's motion for discovery and motion to suppress, Trooper Darcy's selective enforcement practices are a central issue at least ten other recent cases. As highlighted by Ms. Boyd's motion for discovery, Defense Counsel anticipates finding many more unlawful stops and prolonged detention of motorists of color – demonstrating a clear disparate impact. To

---

[1] Certain hairstyles associated with Black U.S. culture have long been the focus of appearance based discrimination, which is, at its heart, another means of perpetuating racism. Black women are the primary targets of racist hair discrimination. *See Is Hair Discrimination, Race Discrimination?* D. Sharmin Arefin, American Bar.Org April 17, 2020, https://www.americanbar.org/groups/business_law/publications/blt/2020/05/hair-discrimination/.

adequately litigate a hearing on this motion, Ms. Boyd requires the materials outlined in her motion for discovery. She files these motions concomitantly to illustrate the evidence already in her possession, evidence which must be augmented by material now only accessible by the government.

### III.   CONCLUSION

We are living in a legal moment of great import. Once again faced with the enduring legacy of slavery, Jim Crow, and continued race-based policing, we have the opportunity to stand with the constitution. We have the opportunity to demand more from law enforcement – from the boots on the ground to the heads of the U.S. Attorney's offices throughout the country. We know too much about the insidious nature of racism, and its continuing impact on people of color in this country, to continue permitting violations like this one. The case against Ms. Boyd was premised on a manufactured traffic stop based on her race and other physical characteristics. Trooper Darcy's stops have a discriminatory effect; and are clearly motivated by his articulated discriminatory purpose.

The defense asks that the Court schedule a hearing on defendant's motion to dismiss following litigation of her motion for discovery.

Dated this 6th day of April 2021, at Portland, Maine.

Respectfully submitted,

*/s/ Daphne Hallett Donahue*
_____
Attorney for Defendant
Assistant Federal Public Defender
P.O. Box 595
Portland, Me 04112-0595
207-553-7070

FAX: 553-7017  
Daphne_Donahue@fd.org

/s/ Grainne Dunne  
_____  
Attorney for Defendant  
Assistant Federal Public Defender  
P.O. Box 595  
Portland, Me 04112-0595  
207-553-7070  
FAX: 553-7017  
Grainne_dunne@fd.org

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CERTIFICATE OF SERVICE

I, Daphne H. Donahue, Esq., attorney for Alexis Boyd, hereby certify that I have caused to be served via ECF a copy of this motion upon Meghan Connelly, Assistant United States Attorney, and all counsel of record via the ECF system.

Dated this 6th day of April, at Portland, Maine.

Respectfully submitted,

*/s/ Daphne Hallett Donahue*

_____
Daphne Hallett, Donahue, Bar No. 5108
Attorney for Alexis Boyd