UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  2:19-cr-00175-NT |
| | ) | |
| ALEXIS BOYD | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through its attorneys, Donald E. Clark, Acting United States Attorney for the District of Maine, and Meghan E. Connelly, Assistant United States Attorney, respectfully objects to defendant Alexis Boyd's Motion to Dismiss (ECF No. 43).  The defendant has been charged by Indictment with one count of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) (ECF No. 43). The defendant asserts she was the subject of an unconstitutional search and seizure, the genesis of which was her perceived racial identity, certain other physical characteristics, and her manner of hairstyle and dress, and therefore the Indictment must be dismissed as violative of her equal protection rights.  For the following reasons, the government respectfully requests that the defendant's motion be denied.

**FACTUAL BACKGROUND**

On June 26, 2019, at approximately 10:30 p.m., Maine State Trooper John Darcy was on uniformed patrol in a marked State Police vehicle traveling northbound on the Maine turnpike near York.  Trooper Darcy observed the vehicle ahead of him, which had a Maine registration, fail to maintain its lane.  Trooper Darcy also observed that the vehicle was driving to the far right-hand side of the lane the entire time Trooper Darcy was behind it and was travelling approximately 45 miles per hour.  Trooper Darcy activated his blue emergency lights and stopped the driver for failing to maintain his/her lane.

Trooper Darcy approached the vehicle and informed the occupants of the reason for the

stop.  The driver identified himself with a Connecticut identification card as Donald Green (hereinafter "Green").  The passenger identified herself with a Connecticut driver's license as Alexis Boyd (hereinafter "defendant").  Both occupants were individuals of color.  Green's hair was worn in dreadlocks pulled back and hanging down at the base of his neck.  The defendant's hair was covered and therefore not visible.

Green explained he was using a GPS.  Trooper Darcy did not see any signs of fatigue or impairment.  Trooper Darcy asked Green why his identification card was from Connecticut and the vehicle he was driving was registered in Maine.  Green tried explaining but Trooper Darcy had difficulty hearing Green.  Trooper Darcy asked Green to step out of the vehicle so they could speak further.  Green complied.

Trooper Darcy met Green at the rear of the vehicle and asked if he had any weapons on him.  Green said that he did not.  Green consented to a pat-down.  Trooper Darcy did not locate any weapons.

Green explained that he lived in Connecticut and the vehicle was registered in Maine. Green further explained that he lived in Maine for two months with his aunt.  Trooper Darcy asked Green what city or town he lived in.  Green could not answer that.  Green thought he lived on "Bolling Dr." but he could not recall the town or city.

Trooper Darcy asked Green where he was going.  Green said that he was going to his aunt's funeral.  Trooper Darcy asked Green who the defendant was to him, to which Green replied that the defendant was part of his foundation for his business.

Trooper Darcy then spoke with the defendant, who indicated that she and Green were travelling to Bangor to visit her aunt who has cancer.  Trooper Darcy asked who Green was to her and she said he was her cousin.  Boyd said they were going to be in Maine for a few days and

confirmed that there was no other purpose for the trip.

Based on the inconsistent stories from Green and Boyd, Trooper Darcy decided to investigate the matter further with the assistance of a non-marijuana narcotics K9. Trooper Jodell Wilkinson responded to the scene approximately 5 minutes later. While waiting for the arrival of the K9 Trooper Darcy ran Green and Boyd's information through the Bureau of Motor Vehicle database. Trooper Darcy learned that Green's Connecticut driver's license was suspended.

After she arrived on scene, Trooper Wilkinson had her K9 conduct a sniff test of the vehicle. Once the sniff was complete, the K9 indicated to the presence of narcotics in the vehicle.

A search of the vehicle was conducted. While searching the trunk area of the van, Trooper Darcy located a backpack. The contents of the backpack included several clothing items. While searching the socks, Trooper Darcy felt a hard object inside a pair of socks. Trooper Darcy removed the hard object from the socks and observed what appeared to him to be narcotics. After she was administered *Miranda*[1] warnings, the defendant admitted the narcotics were hers and Green was unaware they were in the vehicle. She further admitted to transporting narcotics back and forth from Connecticut to Maine two times a week for approximately a year.

## ARGUMENT

### THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS

"The Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States,* 517 U.S. 806, 813 (1996). The basis for objecting to "intentionally discriminatory application of laws is the Equal Protection Clause…" *Id.* The

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1996).

Supreme Court in *United States v. Armstrong* established that "the requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).  The same is true for selective enforcement claims. *See United States v. Starks*, 99 F. Supp. 3d 227, 229 (D. Mass. 2015)[2]; *United States v. Alcaraz-Arellano,* 441 F.3d 1252, 1264 (10th Cir. 2006).  In asserting a claim of selective enforcement in violation of the Equal Protection Clause, the defendant must present evidence "from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect." *Alcaraz-Arello*, 441 F.3d at 1264 (quoting *Marshall v. Columbia Lea Reg's Hosp.*, 345 F.3d 1157, 1167 (10th Cir. 2003)).  To prove discriminatory effect, an individual "must make a credible showing that a similarly-situated individual of another race could have been, but was not stopped or arrested for the offense for which the defendant was stopped or arrested." *Id.* (cleaned up).  And to establish a discriminatory purpose, it must be demonstrated that discriminatory intent was a motivating factor in deciding to enforce the law against the defendant. *Id.*   This can be proven by either direct or circumstantial evidence. *Id.*

The court in *Alcaraz-Arello* emphasized the importance of requiring a demanding standard of proof for selective enforcement claims. *Id.* The court noted that, "'[charges of racial discrimination…may be easy to make and difficult to disprove,'" and that "[e]xecutive-branch officials possess broad discretion in determining when to make a traffic stop or an arrest." *Id* (quoting *Marshall*, 345 F.3d at 1167).  In addition, "[j]udicial interference with law enforcement discretion might 'induce police officers to protect themselves against false accusations in ways that are counterproductive to fair and effective enforcement of the laws…'" *Id*.  As a result, the

---

[2] The court in *Starks* considered a selective enforcement claim in the context of a motion to suppress, not in a motion to dismiss, as is the case here.

court concluded that the standard for proving a selective enforcement claim is a demanding one.

*Id.*

The First Circuit defines a "similarly situated" individual as "one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) (citing *Armstrong*, 517 U.S. at 469).  The defendant in both her Motion for Discovery (ECF 41) and her Motion to Dismiss (ECF 43) cites to eight cases where an individual of color was stopped by Trooper John Darcy.  Further, the defendant provides a transcript of a conversation with Trooper Darcy and another trooper from *United States v. Terrel Walker*, 19-220-JDL, a case that was dismissed by the United States Attorney's Office.  The transcript is as follows:

| | |
|---|---|
| Trooper Darcy: | Like if I see a white thug, I'm going to be interested, just like a black thug, or a fuckin' Chinese thug. Like, I'm interested in thugs, that's not racial profiling. Like some black guy goes by, and he's just some normal dude from Portland, like whatever. This guy kind of looks like a thug, to be honest with you. |
| Other Trooper: | You see the guy driving? |
| Trooper Darcy: | Yeah. He's wearing a wife-beater, he's got dreads, he looks like a thug, he may not be. And I'm not profiling him racially, because I don't care that he's white, black.  White kid, neck tats all over him, fucking sideways hat, thug, you know what I mean. So like I get… I hate when people try to make it seem like that's what it is.  I care about where people are from, and the way they seem, do you know what I mean? Like, do they seem like they could be involved in the drug game, or gangs, you know what I mean? I don't give a fuck whether they are black or white, like… And I like saying this, Nicole has a niece who is half black, I'll tell someone like, my niece is half-black, don't play that racial shit with me. |

The standard to determine discriminatory effect is well settled. The defendant must make a credible showing that a similarly-situated individual of *another* race could have been, but was not in fact stopped for the same conduct.  *See Lewis*, 517 F.3d at 27. The defendant has not done that.

The defendant also alleges that 41 P.A.C.E. team traffic stops recently publicized by Maine State Police on its Instagram social media account demonstrate a racial disparity in stops conducted by the P.A.C.E. team. *Defendant's Motion for Discovery* (ECF 41) at 13-14. The defendant further contends that this disparity is striking, given that Maine is a majority white state.  However, there is nothing to suggest that the 41 cases publicized on the Maine State Police Instagram account are representative of the total number of persons stopped by the P.A.C.E. team, or by Trooper Darcy.  The defendant acknowledges that "[t]his is likely only a fraction of the stops made by P.A.C.E team members." *Id.*  Further, the criteria used by Maine State Police to select which cases to publicize is unknown.  Additionally, the defendant notes that the race of persons stopped was not reported in 11 of the 41 cases publicized by the Maine State Police. Accordingly, the information provided by the defendant is not representative of Trooper Darcy's stops and does not constitute evidence of discriminatory effect.

The defendant also fails to provide any reasonable standard which could be used to determine whether there is a racial disparity amongst motorists stopped by Trooper Darcy. The defendant contends that 93 percent of the Maine Population identifies as white and claims that "[i]t is safe to conclude that the driving public is a reflection of the public at large, and thus that the overwhelming number of drivers, and by extension people who commit traffic infractions on Maine roads are also white." *Id*. at 23. The defendant presumes that the percentage of white, Black, and Hispanic motorists correlates with their percentages of the population in the entire

state of Maine yet fails to provide any factual support for this assertion. The defendant has not

provided any evidence concerning the proportion of white, Black, and Hispanic motorists in

York County, where Trooper Darcy patrols. Similarly, Defendant has not offered any

information concerning the percentages of white, Black, and Hispanic motorists traveling on

Interstate 95, where Trooper Darcy patrols. In short, the defendant has not provided any evidence

of discriminatory effects in stops conducted by Trooper Darcy.

The Maine State Police Office of Professional Standards investigated Trooper Darcy's

conduct in *United States v. Terrel Walker*. The investigation included interviews and an

examination of over one thousand traffic stops conducted by Trooper Darcy. The United States

Attorney's Office has obtained documents created by the Maine State Police during the course of

its investigation and has provided some of these documents, with redactions, to the defendant. [3]

These documents include summaries of information concerning Trooper Darcy's stops in

2019 and ten months in 2020. According to the summaries, Trooper Darcy conducted a total of

705 stops in 2019.  Of the 705 stops in 2019, 475 were of white individuals (67.38%), 86 were of

Black individuals (12.2 %), 36 were of Hispanic individuals (5.11%), 22 were of Asian

individuals (3.12%) and 86 were of individuals whose race was unknown (12.2%). Between

January 2020 and October 2020, Trooper Darcy conducted 350 traffic stops. Of the 350 stops in

2020, 254 were of white individuals (72.57%), 28 were of Black individuals (8%), 20 were of

Hispanic individuals (5.71%), 10 were of Asian individuals (2.86%) and 38 were of individuals

whose race was unknown (10.86%).

---

[3] Following its investigation, the Maine State Police concluded that there was "no evidence of any pattern of targeting of motorists based on race, or any other trait common to a protected group." *Investigative Findings Regarding MSP Trooper John Darcy*, Maine State Police (July 13, 2021), https://www.maine.gov/dps/msp/media-center/public-releases/investigative-findings-regarding-msp-trooper-john-darcy.

Additionally, the government provided summaries (two separate documents) created by the Maine State Police listing the details of the five vehicle stops conducted by Trooper Darcy before and after traffic stops in 2020 that yielded drug seizures. One document summarizes the ten stops surrounding drug seizure stops that were sent to the State of Maine for anticipated prosecution. A second document provides summary details of the ten stops surrounding a traffic stop that resulted in a drug seizure that was sent to the United States Attorney's Office for anticipated prosecution. These documents set forth the date, ethnicity of occupant involved, reason for the stop, and result of the stop. They also provide the vehicle registration and state of registration, as well as the state affiliated with the driver's license.

The government provided this discovery to the defendant after she filed the instant motion. The defendant has chosen not to withdraw or supplement her Motion to Dismiss with this new information, which includes data pertaining to similarly situated individuals as defined by the First Circuit. The defendant fails to meet her burden of demonstrating that Trooper Darcy's actions had a discriminatory effect. The defendant only provides evidence of eight cases of individuals of the same race as the defendant and self-compiled speculative statistical data. This does not rise to the standard of proving Trooper Darcy's conduct violated the Equal Protection Clause. As such the defendant's motion to dismiss should be denied.

## CONCLUSION

The government respectfully requests that the Defendant's Motion to Dismiss be denied.


Dated: August 6, 2021

Donald E. Clark
Acting United States Attorney

 /s/ Meghan E. Connelly
Meghan E. Connelly
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street Plaza, East Tower
Portland, ME  04101
(207) 780-3257
Meghan.connelly@usdoj.gov

# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 6, 2021, I electronically filed the Government's Opposition to the Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record.

Donald E. Clark
Acting United States Attorney


<u>/s/ Meghan E. Connelly</u>
Meghan E. Connelly
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street Plaza, East Tower
Portland, ME  04101
(207) 780-3257
Meghan.connelly@usdoj.gov