UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                             )<br>)<br>ALEXIS BOYD                              ) | Crim. No. 2:19-cr-00175-NT |

**GOVERNMENT'S OBJECTION TO DEFENDANT'S
MOTIONS TO SUPPRESS EVIDENCE AND INCORPORATED
MEMORANDUM**

NOW COMES the United States of America, by and through its attorneys Donald E. Clark, Acting United States Attorney for the District of Maine, and Michael J. Conley, Assistant United States Attorney, and respectfully objects to defendant's Motion to Suppress Evidence ("Motion"). In her Motion, the defendant challenges the legality of a June 26, 2019 traffic stop by the Maine State Police. The government respectfully submits that the defendant's challenge should fail.

**FACTUAL BACKGROUND**[1]

*Traffic Stop Executed*

On June 26, 2019, at approximately 10:30 p.m., Maine State Trooper John Darcy was on uniformed patrol in a marked State Police vehicle traveling northbound on the Maine turnpike near York. Trooper Darcy observed the vehicle ahead of him, which had a Maine registration, make contact with the fog line three times in under one minute. Trooper Darcy also observed that the vehicle was

---

[1] The Government acknowledges that the defendant's Motion has raised issues that warrant an evidentiary hearing. The Government will support this opposition with evidence introduced at that hearing.

1

travelling 45 miles per hour and was being driven to the far right-hand side of the lane the entire time Trooper Darcy was behind it. Trooper Darcy activated his blue emergency lights and stopped the vehicle for failing to maintain its lane.

Trooper Darcy approached the vehicle and informed the occupants of the reason for the stop. The driver identified himself with a Connecticut identification card as Donald Green. The passenger identified herself with a Connecticut driver's license as Alexis Boyd. Green explained that he was having difficulty maintaining his lane because he was using a GPS. Trooper Darcy did not see any signs of fatigue or impairment.

*Green Questioned*

Trooper Darcy asked Green why his identification card was from Connecticut and the vehicle he was driving was registered in Maine. Green tried explaining but Trooper Darcy had difficulty hearing Green. Trooper Darcy asked Green to step out of the vehicle so they could speak further. Green complied.

Trooper Darcy met Green at the rear of the vehicle and asked if he had any weapons on him. Green said that he did not. Green consented to a pat-down. Trooper Darcy did not locate any weapons.

Green explained that he lived in Connecticut and the vehicle was registered in Maine. Green further explained that he lived in Maine for two months with his aunt. Trooper Darcy asked Green what city or town he lived in. Green could not answer that. Green thought he lived on "Bolling Dr." but he could not recall the town or city.

Trooper Darcy asked Green where he was going. Green said that he was going to his aunt's funeral. Trooper Darcy asked Green who Boyd was to him, to which Green replied that Boyd was part of his foundation for his business.

### *Boyd Questioned*

Trooper Darcy then spoke with Boyd, who indicated that she and Green were travelling to Bangor to visit her aunt who has cancer. Trooper Darcy asked who Green was to her and she said he was her cousin. Boyd said they were going to be in Maine for a few days and confirmed that there was no other purpose for the trip.

### *Assistance of K9 Requested*

Based on the inconsistent stories from Green and Boyd, Trooper Darcy decided to investigate the matter further with the assistance of a non-marijuana narcotics K9. Trooper Darcy informed Green that a drug dog was being called. Green responded "You can do that . . . I don't have nothing to hide." Trooper Jodell Wilkinson responded to the scene approximately 5 minutes later. While waiting for the arrival of the K9, Trooper Darcy ran Green and Boyd's information through the BMV database. Trooper Darcy learned that Green's Connecticut driver's license was suspended.

### *K9 Indicates to Presence of Narcotics/Vehicle Searched*

After she arrived on scene, Trooper Wilkinson had her K9 conduct a sniff test of the vehicle. Once the sniff was complete, the K9 indicated to the presence of narcotics on the vehicle.

A search of the vehicle was conducted. While searching trunk area of the

van, Trooper Darcy located a backpack. The contents of the backpack included several clothing items. While searching a pair of socks, Trooper Darcy felt a hard object inside a pair of socks. Trooper Darcy removed the hard object from the socks and observed what appeared to him to be narcotics.

*Cruiser Cam*

The government's evidence will include a video recording from Trooper Darcy's police cruiser. That video will establish the following approximate timeline:

| | |
|---|---|
| Vehicle Contacts Fog Line First Time: | 3 seconds into video |
| Vehicle Contacts Fog Line Second Time: | 26 seconds into video |
| Vehicle Contacts Fog Line Third Time: | 59 seconds into video |
| Traffic Stop Initiated: | 1:00 into video |
| Trooper Darcy Approaches Vehicle/Speaks to Occupants: | 1:30 into video |
| Trooper Darcy Asks Green to Step Out: | 3:10 into video |
| Trooper Darcy Questions Green Roadside: | 3:28-6:10 |
| Trooper Darcy Questions Defendant: | 6:15-7:20 |
| Trooper Darcy Runs License/Calls for Drug Dog: | 8:00 into video |
| Green License Comes Back Suspended: | 8:50 into video |
| Trooper Darcy Discusses Suspended License with Green: | 8:55-10:50 |
| Drug Dog Arrives: | 13:10 into video |
| Dog Sniff Conducted: | 17:58-19:00 |

## DISCUSSION

I.  The June 26, 2019 Traffic Stop Was Supported By Reasonable And Articulable Suspicion

A traffic stop involves a detention of the vehicle and its occupants and thus constitutes a seizure within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653-54 (1979). "A traffic stop is constitutional if an officer has a reasonable suspicion of unlawful conduct involving a motor vehicle or its operation[.]" United States v. Jenkins, 680 F.3d 101, 104 (1st Cir. 2012) (citing United States v. Chhien, 266 F.3d 1, 5-6 (1st Cir. 2001)). Reasonable suspicion entails "a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal citations and quotations omitted). The level of suspicion required is "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Navarette v. California, 572 U.S. 393, 397 (2014) (internal citations and quotations omitted).

In this case, Trooper Darcy had reasonable articulable suspicion that Green either was impaired or committed a traffic violation when he repeatedly made contact with the fog line over a short period of time during the late-night hours of June 26, 2019. "A vehicle must be operated as nearly as practical entirely within a single lane." 29-A M.R.S. § 2051(1). The Maine Law Court has explained that "[t]here is no precise number of line touchings or crossings by a vehicle operator that delineates a constitutionally justified stop from an unjustified one." State v.

Laforge, 43 A.3d 961 (Me. 2012) (traffic stop appropriate where officer saw defendant drive onto the centerline twice, then cross the fog line with his passenger-side tires twice, and then cross the centerline with his driver-side tires twice more); see also State v. Porter, 960 A.2d 321 (Me. 2008) (traffic stop appropriate where, within a quarter of a mile, the defendant drove onto the fog line, then over the centerline by a foot, and then onto the center and fog lines again.); State v. Pelletier, 541 A. 2d 1296, 1296-97 (Me.1988)(approving of traffic stop where officer followed defendant's vehicle for four to five miles and stopped it after observing the vehicle cross the centerline three times and drift onto the shoulder once over the distance). Although the caselaw is replete with more egregious traffic infractions than the one involved here, this case contains more indicia of a traffic violation than State v. Caron, 534 A.2d 978, 979 (Me. 1987), upon which the defendant relies, where a brief straddling of the centerline, without more, did not support the officer's subjective suspicion that defendant was either intoxicated or asleep.

The circumstances here, including (1) the late hour of the stop; (2) Green contacting the fog line three times in under one minute; and (3) Green barely maintaining the minimum speed of 45 miles-per-hour, justified Trooper Darcy's decision to execute a traffic stop.[2] Trooper Darcy's suspicion was objectively reasonable and therefore the stop of Green's vehicle was reasonable under the

---

[2] The circumstances of this traffic stop may also support a finding that Trooper Darcy was properly motivated by a public safety concern, in light of the time of the stop, Green's repeated contact with the fog line and his slow speed. Safety reasons alone can justify a stop if based on specific and articulable facts. See State v. Pinkham, 565 A.2d 318, 319 (Me.1989).

6

Fourth Amendment. See United States v. Miles, No. 2:18-CR-00144-GZS, 2019 WL 3220574, at *3 (D. Me. July 17, 2019) ("The Fourth Amendment applies to traffic stops, but it requires only that an officer act on 'reasonable suspicion of unlawful conduct,' not that such conduct occur." (quoting United States v. Jenkins, 680 F.3d 101, 104 (1st Cir. 2012)).

This Court should reject defendant's attempts to analyze Trooper Darcy's alleged subjective motivations for the stop. The Supreme Court has been crystal clear that "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806 (1996). Indeed, the Court has explained that its cases "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." Id. The First Circuit has similarly explained that an officer's "ulterior motive is of no consequence under the Fourth Amendment." United States v. Favreau, 886 F.3d 27, 30 (1st Cir. 2018) (citing Whren); see also United States v. Fagan, No. 2:19-CR-123-DBH, 2021 WL 3262139, at *3 (D. Me. July 29, 2021) (declining to consider in context of suppression motion whether Trooper Darcy's decision to stop defendant was based upon racial criteria ). Here, the Court will have the cruiser video to examine and will be able to observe exactly what Trooper Darcy observed when he made the decision to execute the challenged traffic stop.

    II.    <u>The Traffic Stop Was Not Unlawfully Extended Before Trooper Darcy Caused a Dog Sniff to be Initiated</u>

A traffic stop that is lawful at its inception remains subject to reasonableness constraints in its execution. In Rodriguez v. United States, 135 S. Ct. 1609 (2015),

7

the Supreme Court held that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop and attend to related safety concerns." Id. at 1611 (citation omitted). "[A]bsent reasonable suspicion" that the motorist is engaged in criminal activity, a traffic stop "may last no longer than is necessary to effectuate th[e] [traffic-related] purpose" of the stop. Id. (quotation marks omitted). The Rodriguez Court explained that "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to [the traffic] stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Id. at 1615 (quotation marks omitted; brackets in original). Actions that an officer takes in order to protect his "safety interest" also "stem[ ] from the mission of the stop itself." Id. at 1616. Examples of activities furthering that safety interest include "criminal record and outstanding warrant checks," id., as well as other precautions, such as asking the driver to step out of his car, id. (citing Mimms, 434 U.S. at 110-11). See United States v. McGregor, 650 F.3d 813, 820 (1st Cir. 2011) (officer may order occupants of vehicle to step out during traffic stop).

Absent reasonable suspicion of wrongdoing, an officer may perform "unrelated checks" to investigate potential criminal activity other than the traffic violation if those checks do not "prolong[ ] the stop," that is, if inquiries related to the traffic purpose of the stop are ongoing. Rodriguez, 135 S. Ct. at 1614-15; accord Arizona v. Johnson, 555 U.S. 323, 330 (2009). Moreover, the First Circuit has

observed that an officer "may shift his focus and increase the scope of his investigation by degrees if his suspicions mount during the course of the detention." United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001). The key question is "whether the officer's subsequent actions were fairly responsive to the emerging tableau – the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed." Id.

If during a traffic stop the officer develops "reasonable suspicion that criminal activity unrelated to the stop is afoot," United States v. Chavez Loya, 528 F.3d 546, 553 (8th Cir. 2008), that reasonable suspicion "justifie[s] detaining [the individual] beyond completion of the traffic infraction investigation." Rodriguez, 135 S. Ct. at 1616-17 (remanding to permit court of appeals to consider whether a post-ticket dog sniff was "independently supported by individualized suspicion"); accord United States v. Chaney, 584 F.3d 20, 26 (1st Cir. 2009) (holding that any extension of traffic stop was justified by reasonable suspicion). "[D]ue allowance" must be made for "officers to draw upon their experience and arrive at inferences and deductions that might well elude an untrained person." United States v. Cardona-Vicente, 817 F.3d 823 (1st Cir. 2016) (quotation marks omitted).

Trooper Darcy's actions before he called for a drug dog fell within the permissible scope of a traffic stop. Trooper Darcy obtained Green's identification and registration and ran checks on those documents from his police cruiser. He asked Green about his travel plans, which is a legitimate traffic-stop inquiry. See Chhien, 266 F.3d at 9. He also asked Green why the address on his identification

9

was in CT while the vehicle he was driving was registered in ME.  He took safety-related precautions, such as having Green step out of the car for questioning and during the document check, and asked Green whether he had weapons and if he was on probation.  These steps were related to the purpose of the traffic stop.  See Rodriguez, 135 S. Ct. at 1614-16.

Defendant contends that Trooper Darcy's inquiries were unreasonably prolonged and extended the stop beyond the issuance of a summons for operating with a suspended license.  To the contrary, Trooper Darcy's questions of both Green and the defendant were reasonably related to those topics and were often invited by Green's answers to Trooper Darcy's questions.  For example, Trooper Darcy was justified in inquiring further after Green was unable to answer basic questions like what city/town he was travelling to and what city/town in Maine he lived in.  According to Green: (1) he was coming to Maine for a funeral for someone who died "a week ago;" (2) he did not know the name of the city he was driving to; (3) he did not know the name of the city he lived in when he lived in Maine previously; and (4) the defendant was a member of a foundation that he owns.

These responses then led Trooper Darcy to briefly question the defendant, who reported: (1) Green was her cousin; and (2) the only purpose of the trip to Maine was to visit her aunt who was sick.  Trooper Darcey did not call for the K9 until Green and the defendant gave conflicting responses with respect to both the purpose of their trip to Maine and nature of their relationship.  This was "a reasonable response to the 'emerging tableau' of the stop."  Chhien, 266 F.3d at 6.

What is more, the law does not require Trooper Darcy to be at an all-out sprint to complete the traffic stop. Rodriguez applies a rule of reasonable diligence, not a rule demanding that tasks related to the traffic infraction be completed in the shortest amount of time conceivable. 135 S. Ct. at 1616; see United States v. Sharpe, 470 U.S. 675, 685 (1985); United States v. Hernandez, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005) ("We underline that the police are not constitutionally required to move at top speed or as fast as possible.").

Within eight minutes of the traffic stop being initiated, Trooper Darcy had developed reasonable suspicion that criminal activity might be afoot, and therefore justifiably called for a K9 to conduct further investigation.  Within twenty minutes of the initiation of the stop, the drug dog had indicated to the presence of narcotics in the vehicle.  No bright-line rule governs the length of a traffic stop, and traffic stops of longer duration have been deemed lawful. See Sharpe, 470 U.S. at 685-86; United States v. Holt, 777 F.3d 1234, 1256 (11th Cir.) (noting that Eleventh Circuit has approved stops lasting fourteen minutes and fifty minutes); United States v. Shareef, 100 F.3d 1491, 1501-02 (11th Cir. 1996) (thirty minutes to execute traffic stop was permissible).   In this case, Trooper Darcy effectuated the traffic stop with reasonable diligence and his conduct was reasonably related to the purpose of the stop, officer-safety concerns and emerging suspicions during the stop.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the defendant's Motion to Suppress be denied.

Dated at Portland, Maine, this 9th day of August 2021.

    Respectfully submitted,
    Donald E. Clark
    Acting United States Attorney

    /s/Michael J. Conley
    Assistant United States Attorney
    United States Attorney's Office
    100 Middle Street, PO Box 9718
    Portland, Maine 04101
    (207) 780-3257
    michael.conley@usdoj.gov

# UNITED STATES DISTRICT
# COURT DISTRICT OF MAINE

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2021, I electronically filed Government's Objection to Defendants' Motions to Suppress Evidence and Incorporated Memorandum with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Daphne Donahue, Esq.

                                               Donald E. Clark
                                               Acting United States Attorney

                                               /s/Michael J. Conley
                                               Assistant United States Attorney
                                               United States Attorney's Office
                                               100 Middle Street, PO Box 9718
                                               Portland, Maine 04101
                                               (207) 780-3257
                                               michael.conley@usdoj.gov