UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | DOCKET 2:19-cr-175-NT |
| | ) | |
| ALEXIS BOYD | ) | |
| | ) | |

**DEFENDANT'S  REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS**

The Government's opposition to Ms. Boyd's motion to suppress proffers three purported justifications for the stop of the vehicle in which Ms. Boyd was a passenger. Only one is fully supported by the evidence in this case: the stop was conducted at night. What is less clear is whether Mr. Green touched the fog line or was "barely maintaining the minimum speed of 45 mph." Government's Objection to Defendant's Motion to Suppress (ECF #59) at 6 ("Gov't Opp Motion to Suppress"). Ms. Boyd appreciates the Government's concession that a hearing is merited by the facts in this case, and requests that the court schedule a hearing on her motion to suppress.

I. **Even under the Government's new alternative basis, the stop of Ms. Boyd was unreasonable.**

In its response in opposition to Ms. Boyd's Motion to Suppress, the Government abandons Trooper Darcy's account of his basis for the stop. Gov't Opp Motion to Suppress at 5.  The Government now contends that the vehicle just briefly touched the fog line on three instances. *Id*. In its response, the Government argues that (1) these three alleged touches of the fog line, (2) the time of the stop (10:30pm) and (3) the vehicle's alleged speed provided sufficient reasonable articulable suspicion to justify the stop.

1

a. *There is no evidence of the vehicle's speed*

The dash cam video does not show the vehicle's speed. There is no evidence that Trooper Darcy clocked Mr. Green's speed on radar. Trooper Darcy did not include his observations of Mr. Green's speed in his incident report. The only mention of the vehicle's speed is Trooper Darcy's recorded statement to Mr. Green that he was traveling "like 45 miles per hour" on the night of the stop – a statement he made immediately after also telling Mr. Green he'd seen him cross the fog line on at least two occasions. Traveling 45 miles per hour on the stretch of road in question is within the speed limit.

Here, the Government appears to concede the Trooper was, at a bare minimum, wrong when he claimed to see the vehicle cross the fog line. Yet it asks the court to look past this and rely on the accuracy of the Trooper's account of the remainder of the stop. Trooper Darcy's credibility is central to the litigation of this case, as outlined in Ms. Boyd's previous filings, including her Reply to the Government's Opposition to her Motion for Discovery (ECF #66) (hereafter "Reply to Gov't Response Motion for Discovery"). The court should give no weight to Trooper Darcy's uncorroborated estimate (omitted from his own report) of the vehicle's speed.

b. **Even if the vehicle was traveling 45 miles per hour, the stop is still unlawful.**

The Government asserts three possible justifications for the stop. First that the Trooper had reasonable articulable suspicion that Mr. Green violated 29-A M.R.S. § 2051(1). Second, that Trooper Darcy had an objective basis to believe Mr. Green was impaired. Finally, in a footnote, the Government contends that the stop may have been justified under the police community caretaking function. Their arguments fail for the reasons detailed below.

Title 29-A § 2051(1) requires motorists to operate their vehicles "as *nearly as practical* entirely within a single lane." 29-A M.R.S. § 2051(1). The statute does not read "shall operate

entirely within a single lane." Moreover, a motorist may operate "as nearly as practical" and still stray onto or across a lane line. The case law is consistent with this interpretation. As detailed in her motion to suppress, Ms. Boyd was unable to find a single District of Maine or Maine State case where a mere touching of the fog line alone violated 29-A M.R.S. § 2051(1). In *United States v. Williams*, the district court analyzed the Vermont state statute analogous to the Maine statute.[1] *United States v. Williams*, 2014 WL 412526 at *19 (D.Vt. Feb 3, 2014). In *Williams*, the court held that a touching of the passing demarcation line on a highway was not a violation of the statute and that "a contrary interpretation would authorize random stops, penalize routine operation, and lead to absurd or irrational results." *Id* at 20 (internal citations omitted).

Similarly, Ms. Boyd was unable to find a case where touching the fog line while the vehicle was being operated within the speed limits was sufficient reasonable articulable suspicion of impairment. The Government cites to three state cases. In all three cases, the vehicle operated erratically within a lane and crossed over the center or fog line and then traveled to the other side of the lane and either crossed or touched the fog line/centerline on the other side. *See* Gov't Opp Motion to Suppress at 5-6 citing *State v. LaForge* 43 A.3d 961 (2012 ME) (stop reasonable where vehicle completely crossed the fog line twice and touched the center line twice and completely crossed the center line another two times*); State v. Porter*, 960 A.2d 321 (ME 2008) (stop was lawful where officer observed the vehicle drive onto the fog line and straddle the center lane before crossing it by more than a foot); *State v. Pelletier*, 541 A. 2d 1296, 1296-97 (Me.1988) (stop was reasonable after officer saw the vehicle cross the centerline three times and drift onto the shoulder once over the distance).

---

[1] 23 V.S.A § 1038(1): A vehicle shall only be driven, as nearly as practicable, entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

These cases are not comparable to the facts here. Even by Trooper Darcy's account, the vehicle never touched or crossed the lane to the line on the other side. The Government contends that facts here are more egregious than those of *State v. Caron.* Gov't Opp Motion to Suppress at 6. In *Caron* the officer witnessed the vehicle straddle the centerline for 25 to 50 yards. *State v. Caron*, 534 A.2d 978, 979 (Me. 1987). The assertion that touching the fog line has more indicia of an infraction than the facts of *Caron*, is unconvincing.

Finally, in a footnote, the Government suggests the stop could be justified under the police caretaking function. Gov't Opp to Motion to Suppress at 6 FN 2. It cites to *State v. Pinkham*, where, after witnessing the defendant drive straight through an intersection from a turning only lane, officers initiated a stop to advise on proper lane usage. 565 A.2d 318, 319 (Me.1989). The Maine Law Court vacated the district court's order granting Mr. Pinkham's motion to suppress, holding the stop could be permissible to perform an informational function. *Id*.

Even if the vehicle momentarily touched the fog line while driving at a lawful speed, this was insufficient to support a reasonable belief Mr. Green was falling asleep or distracted.[2] *State v. Caron,* 534 A.2d 978 (Me. 1987) (stop unreasonable where Trooper testified he believed the driver to be asleep or impaired based on a single straddling of the center line); s*ee also State v. Sousa*, 2009 WL 2729826 (Me.Super.) (Trial Order) (May 27, 2009) (stop not justified by safety concern, where officer was following vehicle and watched vehicle pull to the side of the road and then after the officer passed, back onto the road). Importantly, as detailed in her Reply to Government's Response to Motion for Discovery, Ms. Boyd believes Trooper Darcy first saw her and Mr. Green

---

[2] In its motion the government wrote that Mr. Green explained to Trooper Darcy he was having difficulty maintaining a lane because he was using GPS. Gov't Opp Motion to Suppress at 2. This is incorrect. It was Trooper Darcy who first suggested to Mr. Green that he was "messing around with the GPS or something like that." Defendant's Motion to Suppress (ECF #42), Exhibit 2, Cruiser Dashcam Footage, 1:45.

as they came through the toll booth. Reply to Gov't Response Motion for Discovery at 6-7. If true, Trooper Darcy observed Mr. Green just minutes before the stop, and thus knew he was fully alert.[3]

Mr. Green's driving was not unlawful, dangerous, or erratic. There was no objective basis to justify the stop.

## II.      The Extended Detention of Ms. Boyd was Unreasonable

Trooper Darcy did not diligently pursue the means of the traffic stop. From the inception of the stop, Trooper Darcy commenced a drug investigation. Prior to even running Mr. Green's license or verifying his registration, Trooper Darcy had already conducted separate roadside investigations and called for the drug K9.

To justify the drug investigation, the Government urges the court to focus on the discrepancies in their itineraries and in their family tree. But this alone is insufficient. "There are a googol of legal but embarrassing or confidential purposes for a trip to Maine that a driver might want to keep from a trooper who stopped him…. In the absence of reasonable and articulable suspicion of some actual crime, the officer cannot continue to detain the driver and passenger in order to get to the bottom of their plan." *State v. Perez*, 2019 N.H. Super. LEXIS 19, *29-30. The court should reject the Government's attempt to justify the expansion of the stop.

## III.     Conclusion

Under *Wren*, a court does not look to the subjective motivations of the officer, but whether there is an objective basis to justify the stop and detention. *Wren v. United States*, 517 U.S. 806 (1996). However, in the analysis of objective basis, courts have examined differing applications

---

[3] This is another example of why information pertaining to the Trooper's credibility, pattern and practice falls within the Government's *Brady* obligations. *See* Defendant's Motion for Discovery (ECF #41) at 6-16; Reply to Government's Response in Opposition to Defendant's Motion to Discovery (ECF #66) at 4-7. Evidence that Trooper Darcy observed Mr. Green minutes before the stop, and thus knew he was fully alert, is material and exculpatory information that undermines the Government's claim the stop could be justified by a safety concern.

among communities. Our nation is in the midst of a national reckoning on race and policing. In the wake of mass demonstrations and public outcry, it is clear that our communities are not equally impacted by policing practices.

A reasonable officer understands that they do not police from a blank slate. Instead, they are policing against the backdrop of these past interactions. Pointing to factors such as nervousness, evasive behavior, even headlong flight from police, in many circumstances is more likely to be a measure of distrust or fear of the police, than of criminal wrongdoing. For this reason, courts have interceded and cautioned against unqualified reliance on such indicators in the reasonable articulable suspicion calculus.[4]

Mr. Green's operation of his vehicle was not unlawful or erratic. Ms. Boyd's and Mr. Green's conduct following the stop was also reasonable given the circumstances the Trooper created.   The court should not allow the Government, to deploy these factors to justify unconstitutional over-policing.

WHEREFORE, for all the foregoing reasons, Defendant Alexis Boyd requests this Honorable Court order the United States to produce the requested materials to the Defendant, and schedule a hearing on defendant's motion to suppress.

---

[4] In her Motion to Suppress, Ms. Boyd pointed to Justice Steven's concurrence in *Illinois v. Wardlow* U.S. 119, 132 (2002) (Stevens J., *concurring*) ("Among some citizens, particularly minorities and those residing in high crime areas, there is also the possibility that the fleeing person is entirely innocent, but, with or without justification, believes that contact with the police can itself be dangerous, apart from any criminal activity associated with the officer's sudden presence. For such a person, unprovoked flight is neither "aberrant" nor "abnormal."); the Second Circuit decision in *United States v. Weaver* 2020 WL 552310 *7(2nd Cir. 2020) (rejecting police claim that defendant's staring at vehicle and the inference from the stare that defendant was trying to "avoid police surveillance" could be used as an articulable factor to support an investigatory stop explaining that "[e]ven if Weaver had been concerned about encounters with the police, the hard reality is that, in the light of incidences of police brutality and discriminatory policing, minority citizens across the country fear encounters with the police, whether guilty or innocent); and Ninth Circuit decision in *United States v. Washington,* 490 F.3d 765, 770-74 (9th Cir. 2007) (holding that under the totality of the circumstances, the police improperly seized the defendant, even though he had already consented to the search of his person. In making its determination, the court considered the tension between Portland police and the African American community, the authoritative manner of the search, and the fact that the search occurred at night). Defendant's Motion to Suppress (ECF #42) at 14-15.

Dated this 24th day of August 2021, at Portland, Maine.

Respectfully submitted,

*/s/ Daphne Hallett Donahue*

_____

Attorney for Defendant
Assistant Federal Public Defender
P.O. Box 595
Portland, Me 04112-0595
207-553-7070
FAX: 553-7017
Daphne_Donahue@fd.org

*/s/ Grainne Dunne*

_____

Attorney for Defendant
Assistant Federal Public Defender
P.O. Box 595
Portland, Me 04112-0595
207-553-7070
FAX: 553-7017
Grainne_dunne@fd.org

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I, Daphne H. Donahue, Esq., attorney for Alexis Boyd, hereby certify that I have caused to be served via ECF a copy of this motion upon Meghan Connelly, Assistant United States Attorney, and all counsel of record via the ECF system.

Dated this 24th day of August, at Portland, Maine.

Respectfully submitted,

*/s/ Daphne Hallett Donahue*

_____
Daphne Hallett, Donahue, Bar No. 5108
Attorney for Alexis Boyd